182257 United States v. Michael Artis Miss Latouf, good morning. That is correct. Thank you. Based on the evidentiary record limited to the December 19th hearing and exhibits, the defendant believes that the stop is a defacto arrest and requires probable cause. The judge erred in finding probable cause. Probable cause by definition and by First Circuit precedent requires some degree of probability. The judge talked about it being a low bar. The requirement that there be probability is not a low bar. It requires that the government prove the same level of probability that a judge or magistrate would require in issuing a warrant. In this case, based on precedent, I would argue that the question of probable cause in this case because it was not only was it a warrantless arrest and search and seizure, but also the agent had time to obtain a search and arrest warrant but chose not to. The stop in this case, the first question is whether they had grounds for the stop in the first place. The second question is whether the conduct during the stop exceeded what is acceptable under a Terry stop. In this case, the officer... Wait a second. The second ground is Terry stop? I thought Judge Hornby's rationale was that there was probable cause for the stop and that the Terry stop arguments were beside the point. Yes, that was the decision he reached. So if that decision is supportable, if there is probable cause for the vehicle stop, then the issue of the Terry stop never arises. Correct. Is that right? Because I would have thought you could have probable cause to think there was contraband in the car and therefore probable cause to stop the car, but the question of whether you could then arrest each passenger upon finding no drugs in the car or search each passenger would be a separate question for which you would need probable cause to do that action. Isn't that right? I agree. Yes, I agree. Except that I thought Judge Hornby's probable cause of the termination was not that there were probable cause to think that there were drugs in the car, but probable cause to think that the passengers in the car were carrying drugs. Correct. That is Judge Hornby's finding. And on that point, what troubled me about it is I can see the argument given the record for concluding that at least one of them did. Correct. I'm having trouble seeing what the basis for identifying which one did would be. And below, I made that argument in the original motion, the government's response to probable cause, which the court eventually accepted, was that it was okay to arrest both of them because under the theory of a conspiracy. That, and I argue in my opening, in my main brief, that there is no evidence that the district court did not rely on that ground. I'm sorry? That the district court did not rely on the conspiracy ground. That is correct. So I'm trying to figure out, if we put aside the conspiracy since the district court didn't rely on it, the district court's logic for why you could conclude that there was probable cause as to both appears to be that there's no apparent innocent explanation for the appearance of the second one. Which is conspiracy theory. Well, I just don't know what the, because that seemed to me, I wasn't sure what authority there was for the proposition that when a caller says, I'm going to do a drug run, could you take me? And then shows up with a second person. What the reason is to think that the second person is in on it. And aiding and abetting probability might be one of the answers to that. If you're doing a drug run, you want somebody else there to help you do the run. And I'm not certain why the inference would be there would be only one person and not two that would be carrying. Well, am I right to record says, as I understand the record, the record was that the informant informed the officer that one person would be showing up, namely the caller. And that he believed that person was a known drug dealer. Yeah, but besides that, there's no indication that the caller suggested more than one person would be showing up to do the run. Correct. And also you want to address Judge Lynch's points. What I'm troubled by in the judge's conclusion, addressing the two people instead of one, is that it really is a conspiracy theory. Because this person could be an innocent bystander. There's no evidence on the record that he's aiding and abetting. And absent the government's ability to... Oh, then why is he there? Going for a ride to Maine. Oh, really? With a guy carrying drugs? But I thought, to me this seems like, clearly if this was a sufficiency challenge, his mere But it's not a sufficiency challenge, it's a probable cause determination. So I'm trying to figure out what authority there is that guides us as to whether there's probable cause to think that a second person who shows up, about which we have no information other than their presence, is in on it. So in D-ray, they say that if you've specifically identified the target, you can't assume that the other people who are present with that identified target are suspects. And so there's no probable cause, it's the other people. Here, it's a little bit unclear to me whether anyone was identified. Well, my understanding is that neither one of them were male, so neither one of them were identified. There's a reference in the record to saying, he says, the target is here, plus another one. I thought he said there's two people. He does, but he refers to one as the target. Was that a trial or was that a suppression hearing? It was a suppression hearing. I don't recall that. Perhaps that also undercuts the probable cause because that means he doesn't know who male is. Right. We'll take a look at the record. You've reserved a minute. Thank you. Good morning. Good morning. Amy Fairfield for Q on Merit. This morning, and I, like my colleague, Ms. Latouf, would like to reserve one minute. Yes, you may have it. Thank you. And picking up where Judge Barron left off with questioning, I would argue that I think the court is correct in its analysis. Where does the probable cause come from for person two? The record is completely barren of any explanation as to where person two... Do you have any case law that would guide us on what to do in a situation in which there's two persons? Because you could think, well, it's reasonable to infer that they wouldn't just show up randomly, so therefore there's probable cause to think they're in on it. Or you could think, could be his brother, there's no indication he told him about the drug trafficking, and he wants to go to Lewiston, Maine, so absent some evidence, we should assume there's no reason to suspect it. I don't know which to do, but I don't have any case law that either party has identified that would help me think through that. We do have some case law, though, that says that it is reasonable to infer that criminals normally do not wish to commit their crimes in front of innocent parties. In certain circumstances, at least, you can draw the inference that someone is a participant. We also have the fact, in this case, that when the driver arrived at the bus station, both of the individuals participated in checking out the car, presumably for GPS devices, tracking devices. That sort of thing. That wasn't done by one individual with the other just sitting by. From what description I read in the record, both of them participated equally in that. Was the officer told about that? Your Honor, I acknowledge that the record at trial was that. I think they were looking at the evidence that was deduced from Mr. Haskew's CI1. They were checking the car for lights, functioning lights. I don't know that it referenced GPS. To make sure they wouldn't be stopped. That information or that testimony was not elicited or known to Agent Medour at suppression. In fact, the limited knowledge base that Agent Medour had was that there was a person who called Gary Haskew's CI1 who indicated that he would like a ride from out of state to Maine and that he was carrying a load of crack. The information, the phone call that came in to Gary Haskew's, he wasn't certain who that person was. He thought it may be male. Is it significant for purposes of probable cause that there's a reference for the officer's purposes to it being a load of crack? Because you might think that if that's a large enough amount, it would be reasonable for the officer to think that both people would be in on it. As opposed to a small amount of crack, which would be harder to think maybe the other person knew about it. Well, the interesting piece about that is when Mr. Haskew was questioned at suppression as to what he told Medour about the drugs, Mr. Haskew indicated that he had no idea if it was crack or heroin. It's one of those that those people bring up to Lewiston. Does that matter? The question is load of. It doesn't matter whether it's crack or heroin. Load implies something larger. I also have two other questions about the record. The confidential informant did tell the officer that he was told that he would get a share of the drugs, some portion of the drugs, to compensate him for picking up the person or persons. Okay, that's correct, right? And was there an identification of one over the other as to who said that? And then secondly, I thought there was a question about where they could stay when they reached Lewiston. They asked for advice from, and again, was that at the suppression hearing or was that at trial? And was it a reference to where they could stay? Thank you. So to take your first question, it was a hook him up. It wasn't explicitly said that it was drugs. No, no, you're missing the point. Who said it? Who said it? The record is entirely unclear. All we know is that the caller said it. The caller? It actually was said during the ride back. Was that communicated to the officer? That statement? Well, the officer did not say as much, however, and I'm struggling here because Judge Hornby gave deference to the police officer over the confidential informant. The confidential informant indicated that he, indeed, was told he would be hooked up and without more. And that was at some point conveyed to Officer or Agent Medore. Prior to the stop. Prior to the stop. The information about where to stay in Lewiston was not known until well after the stop and de facto arrest. This point about hooked up, so what we know is that during the ride, the officer was told, according to Judge Hornby's findings, it was found credible that the officer had been told that one of the passengers in the car, we don't know which one, said to the confidential informant that he would hook him up. I don't know that that was part of Judge Hornby's findings. I think that that came from Gary Hesketh and it certainly wasn't testified to about by Agent Medore. I think, I think the question is what were the texts put into evidence? The texts? Yeah. None of, there was no recording of the phone calls, there was no, they never saved the text messages, none of that was available. Judge Hornby, if I may, I'd like to ask you one more question, counsel. This argument that's been developed here today, that there may have been probable cause as to one person, but not as to both, and that we have no way of telling which the innocent party in that scenario would be. Was that argument ever made in the district court? Yes, I believe that we did raise the issue of there was two people and not just one, and that was raised below. Well, to be precise, there was a, certainly there is indications that you've mentioned that there were two people, and Judge Hornby certainly treats that as an argument that the fact that two showed up undermines the credibility, or the reliability of the account of the call without being one, and he quite understandably says that's not a good reason to say that the call didn't happen. Judge, Shelley's question, if I understand it, is different. Was the legal argument made that there was only probable cause as to one of the two, and since we don't know which one was the one for which there would be probable cause, you can't arrest either? I think those facts were developed at hearing. No, no, no, not at hearing. The facts weren't made. Right. I think it was sufficiently preserved. I don't know whether we sufficiently argued it, but I think that it was preserved in the sense that it was definitely raised. The information came by the testimony. No, the information may have been in the record, but was the legal argument raised? It would be useful if within the next 48 hours you and your co-counsel could send us 28 J letters identifying where in the record that legal argument was made. Not where the facts were developed, but where the legal argument was made, because I'm at this point unsure whether it was. Thank you. Certainly. Thank you. Mr. Crane, before you get going, one of the objections that your opponents have made is that in your briefing to us you rely on information which was put into evidence at trial, but not at the suppression hearing. My reading of the record seems to suggest that they're right about that, and surely the government knows that you cannot do that. Yes, Your Honor, and the brief was actually not trying to do that. The citations in the reply brief that they point to are the opening statement of facts, for instance page 2, but for purposes of reviewing a suppression ruling, the brief is only focused on the facts of that background section of that paragraph. Well, you know, in many ways the prosecution has real obligations to the public, and putting that in the opening of a brief when it shouldn't be properly before us is something you may want to think twice about in the future. And I appreciate and apologize, Your Honor. The reason it was submitted is because it is relevant to the second ruling under review about the co-conspirator statements, and so the opening... Then you can put it in that portion of the argument and not put it in the general section applying to both. Yes, Your Honor, but to be clear, for purposes of the suppression ruling, we are only relying on the evidence that was submitted at the suppression hearing and the facts that are discussed in that background part of our brief. Okay, so you've heard a lively bit of discussion from the panel. Perhaps you would like to address that. What is the evidence? First, was the argument that there may be probable cause as to one but not as to both, was that preserved? You can also weigh it up and tell us in the supplemental filing. But then secondly, what is the evidence you're relying on that two people were involved? My reading of the record is that the legal argument that's been raised this morning was not otherwise raised or preserved. It's true that the fact that two people showed up instead of one was an issue that was made, but as Your Honor has noted, it was more in the context of trying to undermine the reliability and credibility of the confidential informant. In terms of the evidence that's in the record, I guess I wouldn't want to conflate whether something happened at the suppression hearing as opposed to trial, as opposed to thinking of it for the purposes of the probable cause inquiry. What did Agent Medour know or reasonably infer at the time of the stop? Much of the evidence that you were... I have to step back. The evidence that Agent Medour knew at the time of the stop, and therefore the government is saying provides probable cause along the lines that Judge Hoardney found, included the hooked up language. And that was made in the initial call that's on page 92 of the appendix. And the confidential informant relayed that to Agent Medour that he was... Based on the initial call? So statements about being hooked up were made at two different times? Yes. One was as part of the initial call. That information was relayed to Agent Medour. So that would have only come from the caller then? It would have come from the caller to the confidential informant, to Agent Medour. And then the next time there was a reference to hook up, that was not a reference that would have been known to Medour? Well, that was made during the drive, and that was not yet known to Agent Medour. So at the time of the stop, all he knows is that the person who called and wanted the ride had said he would hook up. Well, he knew more than that, but with respect to the hooked up part, that's right. Yes, that he knew that the caller told... So that doesn't help very much with explaining why the second person would have been in on it. I guess I respectfully disagree, Your Honor, because the inference, I think quite reasonable and only common sense inference, is the confidential informant established a time, location, place, and purpose with the caller. And whether or not the caller was one of the two people that showed up, what we do know, and what Agent Medour could reasonably infer, is two people got in the car, drove to Maine... No, that doesn't help you. Two people got in the car. The question is, were both of them engaged in, reasonably thought to be engaged in, drug trafficking? And if one person calls and says, I need a ride so I can traffic in drugs, and then shows up with a second person, what is the basis for thinking that second person is in on it? Well, I think it is a reasonable inference, and especially under the probable cause standard of, is there just a probability or substantial chance of criminal activity, that second person showing up at the same time, also taking the ride, that, as Your Honor also pointed out, that what Agent Medour is told is that it would be a load of crack cocaine. And the hooked-up language at least gives strong inference that at least one person, now, that's correct, that would be carrying drugs on that person in order to provide it in exchange for the ride. What's the basis for thinking the second person knows about it? Well, I guess I would take it the other way and say, even if the officer doesn't know which person, but knows that one does... He can arrest both? I think he can add probable cause to... Suspect both? To suspect both. What's your authority for that? What's your best case for that? And Your Honor, I don't have a best case for that, in part because the argument wasn't previously raised, but I will certainly go look for authority. You're not saying it was waived on appeal. So you had... I don't think... In your briefing to us, there's no authority that helps him with that issue. You haven't argued that they waived that issue on appeal. I didn't foresee that the argument was going to come up because it wasn't raised in any of their briefs. They had raised it in their briefs. So you think it was waived below? I don't think this legal argument was made below. Do you think it was made on appeal? I don't think it was made in their briefs on appeal. I think it was made... No. Correct. Yes. But I... So that said, I will still look for authority. I don't have authority that I know of, of this particular circumstance of the one versus two people, but I would point the court to just cases about probable cause and whether or not it is reasonable for the officer... Can I just read you this quote from DeRay? This is what caused me the concern. This is from Pringle, quoting from DeRay. We said, any inference that everyone on the scene of a crime is a party to it must disappear if the government informer singles out the guilty person. So how does that language bear on this situation? I'm having trouble figuring it out in all honesty. And while I am familiar with DeRay, I have not looked at it recently, and so therefore I don't know if I could give the best answer to that. I guess what I would say is at this point that at the time that the vehicle stop took place, it was reasonable... One of the additional reasons it was reasonable for Agent Meddour to infer is what do you do with the, I guess, silence of the confidential informant other than continuing to provide location information and not raising any sort of flag and telling Agent Meddour that are both here? You raise the point about the target. I think that's in reference to a line of questioning in which it was the AUSA who said, did the target show up? And yes, as opposed to Agent Meddour. So when he says the target, that suggests he had one of... You see what I'm saying? It's an odd phrase to say the target plus one. And if that was the language used by the confidential informant, but what I think happened is in that transcript, at least the transcript page I'm aware of, that it was the AUSA who injected the concept of target plus one, and that wasn't actually... He says yes to it. He does say yes, that's correct. And I think part of what is also unclear from Agent Meddour's perspective is whether he knew or didn't know that Mayo was or wasn't there. The confidential informant, and what my friends on the other side push, is that he was aware that it wasn't Mayo, and therefore it was two complete strangers. In several paragraphs ago, you suggested that in fact the person who made the call may not have been one of the two individuals who showed up. That a call was made and it set in motion a crime and two people show up. Is there any evidence in the record as to whether the CI identified from the voice the caller as being the same person as one of the two who showed up? I don't believe there's any evidence in the record about that. There is evidence in the record that the CI testified at the suppression hearing. This is not information that Agent Meddour offered, so we're not relying on it for probable cause, but that the caller said his name was Michael, which is the first name of one of the defendants here. And after the vehicle stop was completed, Agent Meddour called the phone number that they had been using and a phone that was in the defendant's possession rang. But neither of those were at the time of the vehicle stop. Asking the question the other way around, is there any basis for the conclusion that the caller was neither of the two people who showed up? Because that would seem to me to help the government's case if it were true. I guess at what point in time, Your Honor? Agent Meddour would have known that the caller turned out to be neither of the people who showed up. There's no basis for concluding that Agent Meddour would have thought that. Because that would help with the idea that if somebody says, I would like a load of crack to get up to Lewiston, Maine, and then two people randomly show up at exactly that moment, I think there would be some reason to think they were agents of the caller. Correct, Your Honor. Is there anything in the record that would suggest to Agent Meddour that he would have thought the people who showed up, neither of which, that he would have thought neither of the people who showed up was the caller? Looking only at the time of what he knew at the time of the vehicle stop? So, Your Honor, I think the record's unclear. What the confidential informant testified is that he did tell Agent Meddour that neither person was male. That's different than saying that he thought neither was the caller. Because he also suggested that maybe the caller wasn't male. Well, that's right. At the outset, so the notion that there's several assumptions made along the way. And so the first assumption was that the caller was male, but the confidential informant said he wasn't sure. So Agent Meddour thought it was, but also there was room for doubt. And then depending on how strong you want that assumption to be, based on the confidential informant's testimony, Given this record and the kind of potential markedness of it, setting aside the question of whether I'm playing error because it wasn't raised below, which I understand may be the case. But if that's not the case, wouldn't it just be a lot more sensible in a situation like this where you have reason to think you can stop the caller, no question. Before you start arresting and searching the occupants of the car, you ask a question or so. Like, is this the caller? Well, I believe they... Instead of, let's just arrest them both without knowing who they are. That seems just sort of... And I take that point, Your Honor. They weren't placed under formal arrest. This is coming up on the sort of de facto arrest inquiry. And therefore what the officers did is took them out of the car and then did the dog search, which positively alerted on both. And only at that point did they formally place them under arrest. And while the dog search was going on, Agent Meddour was talking with the confidential informant and the crews that were learning about all the additional information. But then just to be... Your position with respect to probable cause would suggest that even if it was an actual arrest and even if it was a clear search of the person, it would be perfectly legitimate without asking any questions. That's right, Your Honor. And that seems to me that... What's sensible about setting a rule in that way? Because it seems like you've stopped the car. At that point, you could just ask the question of your own informant about who you got in the car. And particularly when you search the... You haven't searched and found anything in the car. It sounds as if you've... Pringle suggests if you found drugs in the car, you could certainly conclude that the other people were in on it. But that hadn't happened. And that's correct, Your Honor. And again, this is coming up in the posture where they were trying to secure the scene for safety reasons. And at that point is when they were detained. They weren't actually planning to say, we want to place everyone under arrest at this point in time with no further investigation. The government's submission is that they could have, but appreciate your points. And I think that's also why the officers didn't proceed along that line, but rather wanted to do further investigation to confirm or dispel their reasonable belief that both of them were involved in drug trafficking, which ended up being true. So it's also possible on this record that the informant was right, that Mayo was the guy who made the call, but Mayo was not one of the two people who showed up. That's possible. It's possible that Mayo made the call and he certainly wasn't one of the two of the persons that they believed was Mayo, or Mayo was never involved. But we don't have a finding about any of that that supports that. The district court just didn't decide on that ground. The district court didn't need a specific finding one way or another on that, and there's evidence that I think supports both. There's also the alternative argument, if the court doesn't want to address the probable cause, about there's reasonable suspicion for the stop and then it was not a de facto arrest, and therefore the dog sniffs would certainly provide the positive alerts enough on each individual. Yeah, we're aware of that. Thank you. Thank you, Your Honor. Okay, rebuttal argument. I'm going to talk quickly. I would like to address one of the questions that the court raised about whether there's any support, whether there's any case law, raising the question of identity and whether we sufficiently raised that issue that we're talking about, which one. And I believe we did raise it both below and here. I'm pointing to Appendix 374 to... You know, we've given you time to make this submission. Do you want to use your one minute to talk about that? No, thank you. Okay, move on. Okay, thank you also. The discussion that you had with the government right now, the agent made or in response to our cross-examination, he was asked, what did you have at this time? Meaning when they talked to him, when... Go ahead, please. It's on Appendix... It's Appendix 97. Made or testified that he agreed that what he had at the time was a call from the CI telling him that he would be picking up one guy named Mayo and that, in fact, he picked up two guys. You didn't know if it was Mayo or not. You didn't ask, okay? And didn't know if there was any drug product in the car because no one had told you that there had been any observation of drugs in the car. And on cross-examination, after suppression hearing, that is what agent made or agreed to and therefore testified to. Secondly, I would also like to... I really want to get back to the question about there being no innocent reason for someone to... for someone who's committing criminality and also in response to Judge Salia. This happens all the time. I mean, we see... I've lost count of the number of cases I've had where the girlfriend's going for a ride with a boyfriend who's transporting drugs and she doesn't know that or then the question becomes whether she's an innocent bystander or whether she has a reason to believe. People come to me all the time. There is... Just because someone's in a car, just because there's two people in a car... I don't have a sexual relationship between the two people. That was never entered. It was never discussed. Yeah, well... But you don't have to be lovers to travel together, do you? I think we can say no. Okay, you've had your time. Thank you. Thank you. I would just like to pick up where Attorney Crain was speaking about the fact that this was a simple detention under Terry versus a de facto arrest. The Raspberry case I think is instructive. In this instance, there's several videos depicting what went down roadside off of Exit 75. So I won't belabor that point. I will say that given the option to state a particularized concern or an articulated concern about safety, as is required under the Raspberry case, the government declined to do so. They rested on a blanket generic statement that was a due suppression that was essentially... There's always a generalized safety concern involved with a stop and or a drug stop. So this was... I'm sorry, what is your point? It may well be true that when there is a drug stop of a load of drugs that there are safety concerns. So what is your point? Only that there needs to be more in order to effectuate a stop of that force. Thank you. Thank you. Thank you both. All three of you.